<div style="text-align:right">NEW-YORK,<br>May, 1814.<br><br>JACKSON<br>v.<br>VAN CORLAER.</div>

Judgment for the defendant.

———※⊕※———

JACKSON, *ex dem.* VAN CORTLANDT AND PATTEN, *against*
VAN CORLAER.

THIS was an action of ejectment for lands in the town of *Hoosick*, in the county of *Rensselaer*, and was tried before the *Chief Justice*.

The premises in question were claimed by the plaintiff, as part of *great lot* No. 30. in the *Hoosick* patent; more particularly as part of great lot (B.) in the subdivision of great lot No. 30. He gave in evidence, 1. Letters patent, dated in *June*, 1688, to *Jacobus Van Cortlandt*, and three other patentees named, for the tract of land commonly called the *Hoosick* patent. 2. The *will* of *Jacob Van Cortlandt*, dated 12th *May*, 1739, devising the one fourth of the patent to his son, *Frederick Van Cortlandt*, for life, and after his death to all his children in fee. The plaintiff then deduced a regular title in fee, under this will, to *Augustus Van Cortlandt*, the lessor of the plaintiff, for a moiety of lot No. 30. in the patent, as possessed by the defendant. He further gave in evidence a deed from *Augustus Van Cortlandt* and his brother *Frederick*, to the other lessor, *Patton*, dated 28th *May*, 1798, for the consideration of 236 pounds, " for all that certain lot of land, situate, lying, and being, in the *Hoosick* patent, distinguished in a survey made by *Naunring Visscher*, by letter B., now in the possession of the said *Robert Patton*, and bounded

<div style="float:right;width:30%;font-size:small">Where parties, claiming lands under different patents, had, nineteen years before the trial, caused a new survey, and had agreed that the line so run on that survey, to be the true boundary line between them and had afterwards repeatedly acquiesced in such line; it was held that the line so settled between them could not be questioned or disturbed, though it might be shown to have been, at first, incorrectly settled.</div>

northerly by lot No. 46. in the possession of *John Ryan* and *Thomas Leonard*, westerly by the farm of land now in possession of *John Munro*, southerly by land now claimed by *Daniel B. Bradt*, and *easterly by the land of Henry Lake, being the easterly bounds of the said Hoosick patent*, containing, by estimation, 236 acres, more or less.

The plaintiff next produced *Bleecker's* map and field book of the survey of the *Hoosick* patent, and proved that the defendant was in possession of part of lot No. 30. as laid down in the said map and field book.

One of the plaintiff's witnesses, on his cross-examination, stated that the defendant was in possession of part of lot No. 30. according to *Bleecker's* map and survey, the lines of which he had seen run so as to include the defendant's possession; that part of the land, being about *one sixteenth* part of an acre, in the possession of the defendant, was within the description contained in the deed of the 28th *May*, 1798, from *A.* and *F. Van Cortlandt* to *Patton*, and that according to the survey of lot B. by *Visscher*, the defendant had about 50 acres of that lot in his possession.

The defendant claimed the premises in question as part of lot No. 2. in *Snyder's* patent, dated 24th *March*, 1762. He gave in evidence a deed from *Crean Brush* to *Hendrick Lake*, dated 25th *September*, 1762, conveying a lot of land, part of *Snyder's* patent. Part of the boundaries described were as follows: " along the north bounds of lot No. 3. west to a tract of land, &c. called *Hoosick*, then along the east bounds of said tract called *Hoosick*, to the southwest corner of lot No. 1. then along the south bounds of lot No. 1. east to the place of beginning," &c. containing 160 acres, more or less.

The defendant gave in evidence a deed from *Hendrick Lake* to *Abraham* and *Garret Lake*, for said lot No. 2. dated 22d *January*, 1798, and a deed of a moiety of the same lot from *Abraham* to *Garret Lake*, dated 29th *August*, 1806.

It was proved that *Hendrick Lake* entered into possession of lot No. 2. not long after the date of his deed, that is, about five or six years before the late war. He cleared up to the road north of his lot, and the lands east of the road have been enclosed for above 30 years. The defendant is a tenant under *Garret Lake*. The witness understood the road to be the *Hoosick* line.

*Asahel Shephard*, a surveyor, testified that about 19 years ago

NEW-YORK,
May, 1814.

JACKSON
v.
VAN CORLAER.

he run out the *east line* of the *Hoosick* patent, (but at whose request he did not recollect, but he thought *David Sprague* paid him,) assuming the river as the base and running two miles east of the river, according to its bend. According to *Bleecker's* map and survey, the premises in question would be within the *Hoosick* patent, and include 42 1-2 acres east of the road and 8 1-2 acres west of it.

Another witness testified that he surveyed 17 acres of the premises in question, in *January*, 1794, soon after the survey by *Shepherd*, at the request of *Henry Lake*. He understood there had been difficulties about the land, and the parties, *Lake* and *Patton*, recognised *Shephard's line, as the true division line*, and had settled and agreed to it, believing it to be the true line. About 17 acres west of the road and east of *Shephard's* line, fell to *Lake*, and *Patton* purchased it of him, and about 8 acres west of the road *Patton* gave up to *Lake;* that it was agreed and understood by them, on that settlement, that *Lake* was to give up to *Patton* all the land he held west of the line, and *Patton* then claimed the land west of the road, and said it was covered by his title and the *Hoosick* patent; that these pieces of land have ever since been held pursuant to that agreement.

A deed was produced, dated 28th *February*, 1794, from *Henry Lake* to *Robert Patton*, for part of lot No. 2. in *Snyder's* patent, lying west of the road and on *Shephard's* line, particularly describing the bounds, and containing 17 acres and 24 rods, more or less.

It was further proved that about 11 years ago the lessor, *Van Cortlandt*, said he gave no deed of lands in *Hoosick*, but according to *Shephard's* survey. That *Henry Lake*, 33 years ago, was in possession east of the road and up to the road; that within ten years, the lessor and the defendant had mutually supported the division fence, as it now stands, between the pieces of land above mentioned, one of 8 acres, and the other of 17 acres. That about two years ago, *Patton* said " there had been differences between the claimants under the *Hoosick* and *Snyder* patents; but that he had settled according to *Shephard's* survey, supposing that to be the true one, but that he was a fool for having made the settlement."

*David Sprague* testified that he was the agent for the *Van Cortlandts*, as to the *Hoosick* lands, but he did not recollect whe-

ther he employed and paid *Shephard* for that survey, but he had frequently employed him to make surveys, and was directed by *Van Cortlandt* to procure parallel lines to be run out from the *Hoosick* river, two miles on each side, from the river as a base.

It was further proved, that after *Shephard's* line was run, *Lake* agreed with *Patton* to give up all the land, in his possession, west of that line, and *Patton* was to give up all that lay east of the line, which he had done, except a small piece or corner, less than one fourth of an acre, which the defendant held in his possession.

The *Chief Justice* was of opinion that *Shephard's* line was conclusive on the parties; that *Patton's* title did not extend beyond that line, and that *Van Cortlandt* was estopped by his deed from extending the line of lot No. 30. beyond the traverse line of *Shephard;* but that as a small piece of land west of *Shephard's* line was in possession of the defendant, the plaintiff was entitled to recover to that extent.

A verdict was, therefore, by consent, taken for the plaintiff, subject to the opinion of the court on the whole case.

*Foot,* for the plaintiff, contended, 1. That the plaintiff had shown a title to the whole of the premises, there being no adverse possession sufficient to bar his claim. (2 *Johns. Cases,* 355. 1 *Johns. Rep.* 51.)

2. That *Van Cortlandt* was not estopped by his deed to *Patton* in 1798. (1 *Caines' Rep.* 493. 8 *Mod.* 313. *Co. Litt.* 352. a. 3 *Johns. Cases,* 103.)

3. That neither *Van Cortlandt* nor *Patton* were concluded by any declarations or agreements of either, as to *Shephard's* line being the true line. (1 *Caines' Rep.* 336. 2 *Johns. Rep.* 355. 5 *Johns. Rep.* 502—507.)

*Wendell* and *Russell,* contra, insisted that the lessors of the plaintiff were concluded by the agreement with *Patton,* establishing *Shephard's* line as the true boundary line between them. They cited *Jackson,* ex dem. *Nellis,* v. *Dysling,* (2 *Caines' Rep.* 197.) *Jackson,* ex dem. *Whitman,* v. *Douglas,* (8 *Johns. Rep.* 367.) *Stuyvesant* v. *Tompkins & Dunham,* (9 *Johns. Rep.* 61.)

*Per Curiam.* Whether *Bleecker's* line is correct or not cannot now be made a question between these parties; for they undertook to run and establish a line for themselves, which is the line, run by *Shephard* in his survey about 19 years ago. According to that survey, the defendant is in possession of no land belonging to the lessors of the plaintiff, except a small piece lying east of the road and north of *Shephard's* line.

After such a lapse of time, and the repeated acquiescence, on the part of the lessors, it would be unjust and inexpedient to disturb that line, admitting that it had been incorrectly settled at first. The parties themselves ought to be the best judges of the boundaries of their own lands; and after they have deliberately settled a boundary line between them, it would give too much encouragement to the spirit of litigation, to look beyond such settlement, and break up the lines so established between them. Though the small piece of land mentioned was not, probably, the object of the action, and is almost too trifling in value to be noticed, yet as the plaintiff is clearly entitled to recover it, he must have judgment for that and no more.

Judgment for the plaintiff, *pro tanto.*