*Smalley* and *Adams*, for plaintiffs.
*Brown* and *Royce*, for defendant.

————o————

ADDISON COUNTY, JANUARY TERM, 1828.

*William White* vs. *Dudley Everest.*

That a line made by the proprietors in the first division of the town into lots
above thirty years ago, is conclusive as a division of such lots : but a line run
by the agreement of two owners of the lots is not thus conclusive ; but may
be weighed by the jury in connection with other testimony tending to confirm it
as a division.

That a person not named in the suit, but who, in point of interest is actual de-
fendant, cannot be compelled to testify for the plaintiff in the suit.

THE questions decided in this case appear in the following bill
of exceptions allowed at the County Court, to wit :  "This is an
"action of ejectment to recover the seizin and possession of ten
"acres of land in the township of *Addison*, and described as *part*
"*of lot No. 24 in the second division of the* 8000-*acre-tract, so cal-*
"*led.*   Plea, *general issue.*   Verdict, *not guilty.*

"On the trial the plaintiff relied upon making, out a title to the
"premises in question by deeds of conveyance, and by an undis-
"turbed possession of the premises, previous to the *ouster* by the
"defendant, for fifteen years.   It became a material question in
"the case to determine where the *North line of lot no.* 24 should
"be.   The plaintiff introduced evidence tending to prove, that
"the said 8000-acre-tract was surveyed and allotted under the di-
"rection of the original proprietors of the same, between the
"years 1785, and 1787,—that a tier of lots in said tract was
"then laid out, of which said lot No. 24 was one, from south to
"north, from No. 16 to 25, inclusive,—and that the division-
"lines of said lots were not, generally, run at that time by the sur-
"veyor, and particularly the division-lines between lots 24 and 25.

"The defendant introduced evidence tending to show, that the
"division lines between said lots 24 and 25, and also between 22
"and 23, were run at the time of the original survey.   The plain-
"tiff also introduced evidence tending to shew that in 1794, one
"*Kellogg* was the owner of lot 25, and one *Vallance*, one of the
"original proprietors of said tract, owned lot 24; that said *Vallance*
"deceased nearly 20 years ago—that during that period, *Vallance*
"declared that he and said *Kellogg* had run a division-line between
"said lots, which said line was, a few days after, traced through
"by *John Harris*, and that the same was then a new line, recently
"marked, and the same witness testified that on clearing the
"land in 1795, he discovered an old line marked, running par-
"allel with, and about 12 rods south of, that line ; that in the year
"1797, *Timothy Harris* was the owner of lot 25, and *John Har-*
"*ris* was the owner of lot 24.   By agreement of said *Harris*, 10
"acres off the north side of lot 24 was to be set off to said *Timothy*,
"and the same was set off by them from the north side of said

"lot, taking the line said to be run by said <span>{ Addison, Jan. 1828.</span>
" *Vallance* and *Kellogg* as the north line of said <span>} *White* vs. *Everest.*</span>
"lot.   At the time the said 10 acres was set off, as aforesaid,
"the said *John* was in possession of said lot 24 under the assur-
"ance that a title to said lot would be made out to him, and soon
"after, viz.  on the 30th of November, 1797, a deed was executed.
" to him by said *Vallance* of lot 23, as also of lot 24, with the
" exception of 10 acres off the north side of lot 24, that said *John*
" continued to occupy the said lot to the line of the 10 acres set off,
" as aforesaid, until the year 1810, when he conveyed the said lot,
" with the exception of the 10 acres, to the plaintiff, who posses-
" sed the same to the time of the commencement of this suit.——
" The plaintiff urged on the trial, that the agreement of the first
" owners of the said two lots, in establishing the division-line of
" said lots in manner aforesaid, and which was acquiesced in by
" the owners, from 1797 to 1808, when the first interruption was
" pretended to have been made to the possession of the said *John*
" *Harris*, as aforesaid, was conclusive evidence of the division-
" line between the said two lots being established in law.   The
" court, in their charge to the Jury upon this point instructed them,
" that, if in the original allotment and survey a line had been act-
" ually run and marked between lot 24 and 25, that must be con-
" sidered the true line between the said lots : that a verbal agree-
" ment between the owners of said two lots to mark and establish
" the division-line of said lots, and the same being done under
" such agreement, would not be conclusive upon their respective
" rights, or binding on either owner ; but that the evidence of
" such agreement and line so made was proper evidence to go to
" the jury for them to give the fact that weight upon the whole evi-
" dence as they should think proper.

   " Upon the trial the defendant introduced evidence tending to
"prove that in 1812 one *Zadock Everest* ploughed and sowed a
"small piece of oats on said disputed premises.   The plaintiff, to
" do away that evidence of interruption to his possession, introdu-
" ced the said *Zadock* as a witness, and offered to prove by him
"that he obtained permission from the plaintiff to sow said oats.——
"The defendant objected to compelling said witness to testify, it
"appearing that the said *Zadock* was the real party-defendant in the

Addison, Jan. 1828. } " suit, and claimed to be the owner of said
White vs. Everest. } " disputed premises at the time of said *ouster*,
" and still claimed to be the owner of the same : the said *Dudley*
" *Everest* being in possession under him and defending in his said
" *Zadock's* right : whereupon the court decided that the said *Za-*
" *dock* was not obliged to testify as a witness in the case.    To
" which decision and charge the plaintiff excepts, and moves that
" the aforesaid questions of law may be placed upon the records,
" and may pass to the Supreme Court for a final decision, and
" that the court will order execution to be stayed.

 " Allowed, by       R. SKINNER, Ch. Judge."

 The counsel for the plaintiff, in support of his exceptions, con-
tended, That evidence of what deceased persons have said in re-
gard to boundary lines is proper : and the testimony of what *Val-*
*lance* said connected with the discovery of the same line by *Har-*
*ris*, is enough to shew that as early as 1794 *Vallance* and *Kellogg*,
the owners of lots 24 and 25, had agreed upon and run the division
line which the plaintiff now claims. Whether there was any division
line run by the surveyor before, and where it was, if run at all,
was doubtful, as appears by the case.    In 1797 *John* and *Timothy*
*Harris* had become the adjoining owners of lots 24 and 25, and they
recognised the same line, and divided their land accordingly.    It
appears that these adjoining owners, and their grantees, possessed
according to this line 13 years, without the slightest interruption,
and up to the present time, without any other than an occasional
interruption by the defendant, which was not known to the plain-
tiff.    After this agreement by the owners as to the line and sub-
sequent possession, they ought to be estopped from setting up any
other.    In other words it should be taken, as conclusive evidence
of the place where the line ought to be.    When the contract by
which a lot of land is conveyed is put in writing and recorded, the
whole object of the statute of frauds is accomplished.    The actual
location or running of the boundary lines is never put in writing or
on record : as to this, parol evidence is admissible.    And actual
divisions by adjoining owners, or indeed, any parol agreement that
relates merely to the ascertainment of the place where the line
runs, ought to be binding.    It is well settled in *England* and in
*New York*, that an award of arbitrators upon such a subject pre-

cludes either party from subsequently dispu- ⎰ Addison, Jan. 1828.
ting what is thus decided by the arbitrators.   An ⎱ *White* vs. *Everest.*
award, in its nature, is no more binding than an agreement.   The
parties, when they agree that a line is in a particular place, are as
much bound as if they agree that **A** shall say where it is, and **A**
says that it is in that place.—*Adams on Eject.* 89.—3 *East*, 15,
*Morris* vs. *Rosser.*—15 *Johns.* 197, *Sellick* vs. *Adams.*   The case
of *Jackson ex. dem.* vs. *Vancorlear*, 11 *Johns.* 123, is exactly in
point with the present case.   In that case, the court say "The
"parties themselves ought to be the best judges of the boundaries
" of their own lands; and after they have deliberately settled a
" boundary line between them, it would give too much encourage-
" ment to the spirit of litigation to look beyond such settlement and
" break up the lines so established between them."   In *Jackson* vs.
*Harder*, 4 *Johns.* 212, it was decided that among tenants in com-
mon, whose *titles are distinct*, parol divisions, followed by posses-
sion accordingly, are binding.   In *Jackson* vs. *Ogden*, 4 *John-
son*, 143, Judge SPENCER says, " that parties whose rights to real
" property may be perfect, and the boundaries of which may be sus-
" ceptible of certain and precise ascertainment, may, by their acts,
" conclude themselves by establishing other & different boundaries."

*Zadock Everest* ought to have been admitted as a witness.   He
was, in no sense, a party to the suit, and not even cited or vouch-
ed to defend.   It appeared, to be sure, that he claimed to own the
land, and that *Dudley Everest* went into possession under him
and defended by his title.   The most that could be made of this
would be, that *Dudley*, if beaten in this suit, could collect, in an-
other suit against *Zadock*, what he lost in this ; though there was no
evidence even of such a contract, at most, it gave to *Zadock* an
interest in the suit, but in no sense made him a party.   To com-
pel him to answer might be the means of charging him with a
debt ; but this would not be an excuse even for him.—*Phil. Ev.*
208, *and note.*—*Peake's Ev.* 193, *note.*   Although it was former-
ly contended that the witness himself, in such case, could refuse
to testify, yet it was never supposed that a party could complain,
because a witness was called to testify against his own interest.   Yet
the objection in this case came from the party.   *Zadock Everest* had
no right to place *Dudley* in a situation to be sued, and thus de-
prive the plaintiff of his testimomy, and at the same time of his
own, on the ground that he was the party.   The plaintiff could

Z

Addison, Jan. 1828. ⎱ not give in evidence the admissions of *Zadock*
*White* vs. *Everest.* ⎰ as a party to the suit, nor would his release to
the plaintiff have settled or stopped the suit.    He was indeed, in
no sense, a party to the suit.    All that can be said is that his title
depended on the same question   then in issue, which is frequent-
ly the case with witnesses.—15 *Mass. R.* 223, *Butler* vs. *Damon.*

*Argument of counsel for defendant.*    Two exceptions are ta-
ken by the plaintiff in this case to the decision of the court on tri-
al.    The first relates to the charge to the jury upon the subject of
the line run, or supposed to be run, by *Kellogg* and *Vallance*, and
the other to the rejection of the testimony of *Zadock Everest.*

As to the first exception, it is proper to premise that there is
nothing in the statement of the case, and, indeed, nothing occur-
red on trial, to justify the charge called for by the plaintiff, nor to
require the charge of the court to the extent to which, from the
statement of the case, it might be understood to go.    If the own-
ers of adjoining lots procure the division line to be run between
them with the view simply of ascertaining where the original line
may be, although it may be done by mutual consent, still it is
most clear that they are not bound by it, if it should appear that
such running is incorrect, and does not accord with the original
line.    If, however, this should be done as a matter of compro-
mise with a view to establish a certain line, right or wrong, and to
terminate a dispute, it would, to say the least of it, present a ve-
ry different question.    The charge might be understood, in the
terms in which it is expressed in the exceptions, to decide that,
even in the latter case, the parties would be bound.    Whether, if
it be so understood, it is correct or not, is not material, unless it
should appear from the evidence that a charge upon this point
was called for.    It is a settled rule, that if the court inadvertently
charge upon a point not arising out of the case, a new trial will
not be granted upon the ground that the charge in that respect is
erroneous.    The question then is, what charge was proper and
pertinent, upon the facts detailed in the case?    The evidence is
that *Vallance*, in 1794, being the owner on one side of the dis-
puted line, stated to the witness that he and *Kellogg*, the owner
on the other side, run the division line, &c.    The first objection
to this is, that it is not legal evidence of the fact that the line was

run by them. It is hearsay merely, and al- ⎧ Addison, Jan. 1828.
though may be admitted with respect to ancient ⎨ *White* vs. *Everest.*
boundaries, still the time elapsed is too short to admit of the application of that rule. The rule should be applied only in those cases where from the lapse of time it may be fairly presumed that the witness, originally acquainted with the fact, cannot be found. In the second place, the declarations of *Vallance*, even if evidence, prove no more than simply the running of the line. It is not stated, nor can it be inferred from his statement, that the line thus run was agreed upon and established by them as and for the true line. Whether the same might be correct or not, the only question therefrom arising upon this evidence is, whether the mere running of the line with a view, as must be intended, to ascertain the true line, is to be considered conclusive upon the party? Upon this question there can be no doubt. And if the court went further, and charged as to the effect of a supposed agreement of which there was no evidence, the charge is to be considered as irrelevant and immaterial. But the charge, in the terms of it, may be supported. If the line had been settled by deed, the parties would undoubtedly have been bound ; or if no original line had been run, perhaps the one agreed upon by the parties must be taken from necessity to be the true line. But if there was an original line, and the new line was variant from that, the parties could not be bound by parol, as the agreement would operate as a conveyance, and would be within the statute of frauds. Besides, both the parties in this case held through intermediate conveyance from *Vallance* and *Kellogg*, & could not be bound by any agreement of theirs, whether committed to writing or recorded. Again, if two parties do agree upon a line, supposing it to be a true line, yet if by mistake in the boundaries, or inaccuracy in running, it should prove not to be so, the parties would not be bound.

The second exception is founded on the rejection of *Zadock Everest* as a witness. The case states that *Zadock Everest* is the real party defendant, and the real claimant of the land. It is an established rule, that a party is not compellable to testify in his own case. This rule is founded on the most substantial reasons, which apply as well to this case as if the said *Zadock* had been the nominal as well as real party. Besides, it is now settled that a wit-

Addison, Jan. 1828. ⎱ ness cannot be compelled to testify against his
White vs. Everest. ⎰ own interest.    The interest of *Zadock* in this
case is apparent, and it certainly was not competent for the
plaintiff to call upon him to testify for the purpose, not only of de-
feating his own claim to the land, but also of subjecting him to
the cost of the suit.—*Sw. Ev.* 77–78.—*Peake's. Ev.* 185.

HUTCHINSON, J. after alluding to the prominent facts in the
case, delivered the opinion of the court.    The principal business
for the jury was to ascertain where the line is that legally sepa-
rates between lot 24 and 25.    For, we must understand from the
case, that the plaintiff owns lot No. 24, and the defendant lot No.
25, excepting that the north ten acres of 24 have become legally
attached to No. 25.    If it were not so, the party excepting must
show it, in order to evince that the decision of the County Court
of which he complains is incorrect.    Now, the plaintiff contends
that the defendant has gone south, and evicted him from a second
ten acres of lot No 24.    To show this, the plaintiff has endeavor-
ed to establish a line so located as to answer that purpose ;    and
contends it was the ancient division line made by the proprietors.
Or, if not, was made by agreement of the owners, and acquiesced
in by them so long as to place it out of dispute.

The court instructed the jury, that if the line the plaintiff con-
tends for was made in the first division of the town, it must be con-
sidered the true line between those lots.    Had the jury so found
the fact, the plaintiff must have had a verdict.

The acquiesence in the line made by agreement of the parties
falls short of fifteen years.    The jury were, therefore, correctly
instructed, that this line so made was not conclusive between the
parties.    If it had been so made, and acquiesced in as a division
line fifteen years, that would have rendered it conclusive.    An a-
greement and acquiescence short of that period cannot, of them-
selves, preclude either party in interest from claiming a true di-
vision as other circumstances shall dictate.

The second question relates to the testimony of *Zadock Ev-
erst*, who, it seems, was unwilling to testify for the plaintiff to a
fact which, if proved, would have made that the plaintiff's act,
which the defendant relies upon as an interruption of the plaintiff's
possession.    The court refused to compel *Zadock* to testify, and

the plaintiff excepted to that decision. It ap-
pears by the case that said *Zadock* had not
merely an interest in the question contested, but an interest in the
cause on trial; in fact, that he was really the defendant, though
not nominally so; the defendant's possession being as that of a
tenant to said *Zadock.*    Observing this distinction decides the
question.    *Zadock* can no more be compelled to testify against his
interest, when his interest is made to appear, as stated in the case,
than if it appeared of record by his being made defendant.    The
plaintiff's counsel urge the hardship of the plaintiff's situation, as
they would not be permitted to prove *Zadock's* concessions if they
made for plaintiff.    That is, probably, a supposition for the sake
of argument.    Had evidence of his concessions been offered and
excluded, that would have presented a question for the consider-
ation of this court which is not now in the case.

{Addison, Jan. 1828.}
{*White* vs. *Everest.*}

Judgment must be entered on the verdict with the cost of this
motion.

*Bates,* for the plaintiff.
*Phelps,* for the defendant.