## JOHN H. BURTON *v.* RALPH LAZELL & LAWRENCE BRAINARD.

Where referees reported that two adjacent land owners had acquiesced in a particular line, as the true line between their lots, for more than fifteen years, it was held that that line must be considered as binding upon the parties and their grantees, notwithstanding the referees found that the original and true line between the two lots was in a different place, and that neither party had cut either wood or timber, or made any clearing or improvement on the strip of land between the two lines, and that no fence had ever been built on either of said lines, and no clearing made to the line thus acquiesced in.

Where the plaintiff, in trespass *quare clausum fregit,* described the *locus in quo* as lot No. 171, and the deeds under which he claimed described the premises conveyed as lot No. 171, and the evidence showed that the line, which had, by the plaintiff and the owner of lot No. 172, lying south of lot No. 171, been acquiesced in for more than fifteen years as the true line between said lots, was not in fact the true line, but included a part of lot No. 172, and that the trespass complained of was committed on the strip of land between that line and the true line, and not on what was originally part of lot No. 171, it was held that such acquiescence had entitled the plaintiff to consider and describe said strip of land as part of lot No. 171, and that he was entitled to recover on a declaration thus describing it.

TRESPASS on the freehold. The *locus in quo* was described in the declaration as lot No. 171 in St. Albans.

The case was sent out to referees, who reported that the plaintiff, in 1818, took a quitclaim deed of said lot No. 171 from Samuel Burton, and soon after went into possession of said lot, and that he had continued to occupy the same to the present time, as a wood and timber lot, claiming it as his own. That lot No. 172 lay south of and adjoining said lot No. 171, and that, at the time the plaintiff went into possession of lot No. 171, one Freeborn Potter was in possession of lot No. 172, and continued to occupy the same as a wood and timber lot, claiming it as his own, until he sold the same to one Beals and the defendant Brainerd, in 1839. That in 1824 the said Potter executed to the plaintiff a quitclaim deed of said lot No. 171; and that, for more than fifteen years previous to the time that said Potter deeded to said Beals and Brainerd, there had been a line marked from what was acknowledged to be the true south east corner of lot No. 171, running westerly, which line was ac-

quiesced in by said Potter and the plaintiff for more than fifteen years, as the true line between lots No. 171 and 172. The defendant Brainard, after becoming possessed of lot No. 172, caused a line to be surveyed and marked from a point, which the referees found was the true original south west corner of lot No. 171, to the said south east corner of said lot. The place where this last line started was about thirty rods north of the line which had been before that time acquiesced in as the true line. The trespass complained of was committed by the defendants on the strip of land between these two lines, originally part of lot No. 172, but which the plaintiff claimed as part of lot No. 171 by virtue of the acquiescence above stated. Upon these facts the referees submitted the decision of the question to the court.

By an additional statement the referees reported that there was no evidence before them that either Potter or the plaintiff had ever cut wood or timber upon the strip of land between the two disputed lines, or that there was ever any fence upon either of said lines, or any clearing or improvement upon said strip, or that Potter had made any clearing to either of the lines.

The defendants filed objections to the report, but they were overruled by the court, and a judgment was rendered for the plaintiff. Exceptions by defendants.

*J. & J. G. Smith* and *A. O. Aldis* for defendants.

1. There being no possession, improvement, or occupancy of any kind, of the strip of land in dispute, the plaintiff has no title by actual possession. His title or right of possession must accrue, if at all, by *constructive* possession, or by the effect of acquiescence. To extend his constructive possession over the strip in dispute, the plaintiff introduced the deeds from Samuel Burton, Harrington, and Potter; but these deeds only convey land described as "Lot No. 171." His constructive possession under these deeds must be limited to "Lot No. 171;"—it can extend no farther than the land conveyed by these deeds. *Owen et ux.* v. *Foster*, 13 Vt. 263. *Hull* v. *Fuller*, 7 Vt. 108. 8 Cow. 589.

2. There can be no acquiescence in an erroneous line, so as to transfer the title from the true owner, when a true line or boundary

is visible on the land, unless there is some actual occupancy of the land according to the erroneous line. *Crowell* v. *Bebee*, 10 Vt. 33. This is necessary to protect the purchaser, who, relying on the true line, as marked on the land, and upon the title as appearing on the record, would otherwise be misled and find himself deprived of his land by words and acts of his grantors, of which he could not possibly have had any notice. Hence in every case reported on this subject of acquiescence, it will be found that there has been an actual occupancy for a long time according to the erroneous line. The cases in New York are all cases of actual occupancy.

The doctrine of acquiescence without such occupancy introduces testimony of a doubtful and uncertain character to affect the title to lands. The ownership of lands will be proved,—not by public records, and the identity of land be verified,—not by original boundaries made upon the land, but by testimony, often doubtful, of confessions made by parties in ignorance of their rights.

3. Acquiescence, though it may divest Potter of his land on No. 172, cannot make Lot No. 172 become No. 171, so that a deed of No. 171 will extend the plaintiff's *constructive* possession to No. 172. Without such possession he cannot recover.

4. Even an express parol agreement, unless accompanied by immediate possession according to it, will not operate to conclude a party to an erroneous line. *Kipp* v. *Norton*, 12 Wend. 127.

*Stevens & Seymour* and *H. R. & J. J. Beardsley* for plaintiff.

1. The line to which the plaintiff claims having been the only one between the two lots at the time of the purchase by the defendant Brainerd, and having been acquiesced in for more than fifteen years by the defendant's grantor, it is now too late for him to question its correctness. *Rockwell* v. *Adams*, 6 Wend. 467. *Beecher* v. *Parmele et al.*, 9 Vt. 353.

2. The land on which the trespass was committed is well described as part of Lot No. 171; after the defendants, or their grantors, have for more than fifteen years acknowledged it to be part of that lot, and permitted the plaintiff to occupy it as such, they cannot be permitted to interpose this technical objection. 2 Stark. Ev. 1517, and cases there cited.

Burton *v.* Lazell et al.

The opinion of the court was delivered by

WILLIAMS, Ch. J. The court do not perceive in this case any question of law determined, either by the referees or the county court, which they can re-examine. The referees, though they submit their report in the alternative, yet, in effect, find all the facts; and they should have drawn their own conclusion from them, without leaving the decision to the court. The question between the parties was, where was the true line between Lot 171 and Lot 172? Both parties established a sufficient title to their respective lots. The determination of this question would depend on the finding of the referees, either where the true original line of division was, or whether the parties had established any other line. That owners of adjoining lots may settle and agree upon a boundary line between them, which, after fifteen years' possession and acquiescence, will be binding, is very clear. The cases of *Jackson v. Van Corlear*, 11 Johns. 123, *Jackson v. Ogden*, 4 Johns. 143, and *White v. Everest*, 1 Vt. 181, recognize this principle. And when a line is marked between the lots, to which both parties claim as the division line for more than fifteen years, this is considered as decisive evidence that the line thus acquiesced in is the true line; and it is not to be disturbed by any survey or new line made after that period has elapsed. It appears that as to three of the corners of Lot No. 171 there was no dispute, and from the south-east corner the line which was acquiesced in, and which was an ancient line, had been run at some period, which may have been at the time the other lines and corners were made and marked. The parties in interest considered and treated it as the true line. The records do not afford the only evidence of the extent of a claim or possession. The existence of a line, the acquiescence of the parties, and the extent of their claim were facts, the existence of which any one interested might have learned on proper inquiry. The land was correctly described as part of Lot No. 171. After this period of acquiescence, the land in dispute became part of Lot No. 171. The judgment of the county court is therefore affirmed.