Ackley v. Buck.

## TRUMBULL ACKLEY v. CHARLES BUCK.

A witness, offered on the part of the plaintiff in an action of ejectment, had formerly been a joint owner with the plaintiff's grantor of a lot of one hundred acres of land, and had agreed with him, within fifteen years before the trial of the action, upon a division of the lot into moieties by a line running east and west, and had conveyed the north half of the lot by metes and bounds, warranting it to contain fifty six acres, and the plaintiff became the owner of the south part of the lot, and this action was brought to recover a strip of land lying upon the west side of his lot, to a line, which he claimed had been acquiesced in by his grantors and the defendant for more than fifteen years before the commencement of the action; and if the plaintiff recovered to this line, his lot would contain fifty acres, and otherwise less than that. And it was held, that, if these facts disclosed any interest in the witness, that interest was fully removed by a release,

executed by the plaintiff to the witness, discharging the witness, and his assigns, from all rights of action accruing at any time to the plaintiff by reason of the division of the original lot between the witness and the plaintiff's grantor.

If a division line between adjoining lots of land is agreed upon by the owners, and is so designated as to be clear and distinct, and is acquiesced in by the respective owners of the lots for more than fifteen years, they will be held bound by such line.

The plaintiff's grantor, who owned a lot of land adjacent to the lot of the defendant, employed a person to build a fence to separate the lots, and such person went on to the land with the defendant, and they agreed upon the boundaries, without the aid of a compass, and then built a fence as near the line as they could conveniently, and this line was acquiesced in by the plaintiff and his grantors and the defendant for more than fifteen years; and it was held, that evidence of the acts of the hired man of the plaintiff's grantor and the defendant, connected with the fact of acquiescence, was admissible, in an action of ejectment, as tending to prove an agreement between the owners of the lots, that the line in question was the true division line.

EJECTMENT for about six and a half acres of land in Reading. Plea, the general issue, and trial by jury,—HEBARD, J., presiding.

The plaintiff and defendant both claimed title to the land in question from Benoni Buck, deceased, the defendant as being one of the heirs of Benoni Buck, and the plaintiff through John L. Buck, who was also one of the heirs. On trial the plaintiff offered as a witness Benoni Buck, who was also one of the heirs of Benoni Buck, deceased, and who was objected to by the defendant on the ground of interest. It appeared, that a tract of land, supposed to contain one hundred acres, had been assigned to John L. Buck, and to the witness and Joseph W. Buck, John L. Buck owning the south half, and the tract being undivided, and that the witness and the plaintiff's grantor, in the year 1832, agreed upon a division of the land, by a line running east and west, into equal moieties, the witness and Joseph W. Buck taking the north half, and that the witness subsequently conveyed away that half by metes and bounds, and covenanted that it contained fifty six acres of land. The plaintiff had become the owner of the south half of the lot, and this action was brought to recover a strip of land lying on the west side of that tract,

and extending to a line, which the plaintiff claimed had been acquiesced in by his grantors and the defendant for more than fifteen years before the commencement of this action.

The defendant insisted, that the effect of a recovery by the defendant would be, by diminishing the quantity of land contained in the plaintiff's half of the hundred acre lot, to remove the plaintiff's north line farther north, and thereby render the witness liable to his grantee upon his covenant. The plaintiff thereupon executed and delivered to the witness a release, discharging him and his assigns from all liability to the plaintiff in any manner arising from the division of the original lot, or from any deficiency of land in the south half of that lot, as divided. The court then admitted the witness to testify.

The evidence on the part of the plaintiff tended to prove, that the witness, Benoni Buck, was employed in the year 1824 by John L. Buck, who then owned the tract of land now owned by the plaintiff, to build a fence to separate that lot from the lot adjoining on the west, then and still owned by the defendant; that the witness and the defendant went on to the land the same year, and, without the aid of a compass, went through the woods from the north east to the south east corner of the defendant's land, and agreed upon the boundaries, and then built a fence, where they could most conveniently, by cutting down trees part of the way, and by repairing an old fence, which had previously been built on the defendant's land to enclose a pasture thereon; and the ends of the fence, thus made, came near where the plaintiff claims the line to be.

The defendant requested the court to charge the jury, that whatever the witness had done, in agreeing upon a line, could have no effect to establish such line, inasmuch as he was employed by the owner of the land *only* to make a fence, and had no authority to agree upon a line.

But the court instructed the jury, that, if John L. Buck employed the witness, as his agent, to go with the defendant and build a division fence between their respective lots of land, and, before making such fence, the witness and defendant, intending to designate and mark the division line between the lots, did designate a line, which had a known boundary at each end, and the defendant, on his part, and John L. Buck and those claiming under him, on their part,

had acquiesced in that line for a period of fifteen years, or more, the defendant would be concluded by it, although the witness was made the agent of John L. Buck for the purpose of making the division fence only ; and that, for this purpose, it was not necessary, that the line should have been run by a compass, or that it should have any particular designation, any farther than to make it clear and distinct.

Verdict for plaintiff. Exceptions by defendant.

*J. L. Buck* for defendant.

1. The witness, Benoni Buck, was legally interested in the event of the suit. He and the plaintiff's grantor owned each one half of a certain tract of land, one the north and the other the south half. In 1832, less than fifteen years before the trial in the court below, they had agreed upon a division of the tract, and divided it into equal parts, upon the supposition that the westerly line, dividing a part of the lot from the defendant's land, was where the plaintiff claims it to be. But if the true line is where the defendant claims, then the plaintiff's grantor is entitled to have the dividing line removed far enough north to take off from that part severed to the witness some more than three acres. The record in this suit would be competent evidence in a suit brought by the plaintiff's grantor against the witness.

2. The interest of the witness was not removed by the discharge. The remedy of the plaintiff was not against the witness, but against his own grantor ; and a release from the plaintiff could have no effect upon the interest of the witness. 2 Stark. Ev. 758.

3. The court erred in refusing to charge the jury as requested by the defendant. An agent cannot bind his principal any farther than in performing the act, for which he is employed.

4. The exceptions show, that no boundaries were made, nor line marked, but only that an agreement was made as to where the line should be. The fence was not built on that line at that time, nor at any other time.

*C. Coolidge* for plaintiff.

1. If there was any interest in the witness, Benoni Buck, it was fully removed by the release executed by the plaintiff.

2. It may be true, as an abstract proposition, that the act of Benoni Buck alone, in agreeing upon a line, had no effect to establish such line; and there might have been some propriety in requesting a charge to that effect, if the plaintiff had claimed, that the making the fence was an actual division by agreement of the parties. That such was not the fact appears on the whole case. Whatever may be considered to have been the effect of the acts of Benoni Buck, it is certain that the defendant was then present and decided for himself where the line ought to be. In this line both the defendant and the party then owning the land now claimed by the plaintiff acquiesced for a period of fifteen years before the commencement of this action. It was this *acquiescence* that decided the right; and the jury were correctly instructed, that, if this were found, the defendant was concluded by it. *Mitchell* v. *Walker,* 2 Aik. 266. *Shumway* v. *Simons,* 1 Vt. 53. *White* v. *Everest,* 1 Vt. 181. *Hazard* v. *Martin,* 2 Vt. 77. *Univ. of Vt.* v. *Reynolds,* 3 Vt. 542. *Stephens, Adm'r,* v. *Griffith et al.,* 3 Vt. 448. *Beecher* v. *Parmelee et al.,* 9 Vt. 352. *Jackson* v. *Ogden,* 4 Johns. 143. *Jackson* v. *Van Cortland et al.,* 11 Johns. 123. *Burton* v. *Lazell et al.,* 16 Vt. 158.

The opinion of the court was delivered by

REDFIELD, J. It is not easy to perceive that the witness, Benoni Buck, had any interest in the suit. It is not uncommon to deliver a release to a witness, when there is doubt in regard to his interest; and that was done in this case. But it is not stated in what manner this witness and the heirs, under whom the plaintiff claims, divided their land. If it was done by quitclaim deed, each must risk his title to his own share. If it was done by parol, it is not shown by the case, that the plaintiff would not still have a full moiety, if he failed in this suit; but it seems to be conceded that he would not. Whether he could then claim a new division is very questionable. But if he could, his release to the witness and his *assigns* will effectually estop him from claiming any more land of them. He has also released all claim for damages of the witness, *or his assigns;* and he cannot be permitted to do that *indirectly,* which, by his own act, he has estopped himself from doing directly. A court of chancery would, we think, without doubt, enjoin him from so doing.

The charge of the court was undoubtedly correct. It was simply, that, if Benoni Buck, as the agent of John L. Buck, who then owned the plaintiff's land, and the defendant fixed upon a dividing line, and so designated it, as to make it "clear and distinct," and that was acquiesced in by the adjoining owners for more than fifteen years, it will bind them. Of the truth of this proposition there can be no doubt; and it is evident, that this must have been the meaning of the charge.

But in regard to the evidence we have had more difficulty. An agreement upon a line by Benoni Buck would not bind John L. Buck, nor would it affect him, unless brought to his knowledge. But he went there, by the employment of John L. Buck, to make a dividing fence between his land and that of the defendant; of course he must ascertain *where the line was.* This he did, and built a fence beginning and ending at the ends of this line, and as near the line as he conveniently could. This was more than fifteen years before the commencement of this action, and the fence thus made has remained until the present time.

The degree of force, to be attached to such evidence, will depend very much upon how near the line, thus made, approached to a straight line. It might be very conclusive evidence to establish acquiescence in a line, or it might be very slight; but it could hardly be said, that it had no tendency to show that the adjoining proprietors had acquiesced in a line, when they had used that fence to divide their lands for more than fifteen years. The testimony was very strong against the defendant; for he had agreed upon this line; he built a fence as near to it as he could; and, where the fence deviated from the line, it went still farther upon his land, but began and terminated in the line, or near it; and, as the line was favorable to the plaintiff, a jury would require less testimony to convince them of *his acquiescence.*

If this testimony had been *rejected*, it would have been impossible to say, that it had *no tendency* to show acquiescence; and if it had such tendency, the question as to its effect was properly submitted to the jury.

Judgment affirmed.