FEBRUARY TERM, 1854; CIRCUIT SESSION IN SEPTEMBER, 1854;

FEBRUARY TERM, 1855,

###### AND AT THE

CIRCUIT SESSION IN SEPTEMBER, 1855.

---

PRESENT,

HON. ISAAC F. REDFIELD, CHIEF JUDGE.

HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

ROYAL T. HALL *v.* JOHN WILLIAMS, *Apt.*

*Purchase of property by an agent without disclosing his agency.*

Property purchased, by an agent, for and on account of his principal, for which the funds are already, or are soon to be furnished, vests immediately in the principal, as against the agent's creditors; notwithstanding the agent does not disclose his agency, and in making the purchase employs, to some extent, his own means.

The omission of the agent to disclose his agency, has no effect upon the rights of his principal or of his creditors. Its only effect will be to make the agent personally liable, if the purchase is made upon credit.

And in such case the principal will also be liable to the persons of whom the purchase is made, even if it is made upon the sole credit of the agent.

TROVER for a quantity of lumber, which the defendant attached as the property of one Walter W. Fish and which was regularly disposed of upon process against said Fish. The cause was refered and the referee reported the following facts.

During the months of February, March, and April, and to the 9th of May, 1850, Fish resided in Jamacia, and tended a grist mill owned by one Harrington, adjoining a saw mill also owned by Harrington, run on shares by one Smith.

In February, 1850, the plaintiff, residing in Townshend, employed Fish to buy for him a quantity of logs in Jamacia, and get them sawed into suitable materials for building a barn, which the plaintiff was intending to erect the ensuing season; and, when sawed, to transport said materials to Townshend.

On the 2d day of April, 1850, the contract between the plaintiff and Fish was reduced to writing, and signed by Fish, and was substantially the same as had been previously made between them in February; and the plaintiff on that day paid Fish the $40 mentioned in said writing; which was as follows:

· "TOWNSHEND, APRIL 2d, 1850."

"This day received from Royal T. Hall forty dollars, to be "expended by me as his agent in the purchase of necessary and "proper materials for the building of a barn, which said Hall is "desirous to erect in said Townshend the ensuing season, which "materials, timber, boards, &c., I am to transport from Jamacia, "if I shall be able to obtain them there, to said Townsend, and if "said sum is not sufficient to pay for said purchases said Hall is to "pay the overplus on delivery, and if more than sufficient to make "said purchases I am to return the overplus to said Hall, and I "am to exercise my best judgment in making said purchases, "both as it respects the quality of the materials to be obtained, and "the price to be paid for the same, and am to neither make or "loose in any contract I shall make as aforesaid."

"WALTER W. FISH."

In consequence of this employment and acting under it, in March, Fish proceeded to buy logs and have them delivered at Harring-

ton's mill, and there sawed by Smith, and nearly the whole of the logs were so bought before the date of said contract; a few were bought early in April after said date. It did not appear when the logs were sawed, except that they were all sawed between the first of March and the 9th day of May, following. Fish bought the logs of a number of persons, sometimes only a single log in a place, and two and three and upwards, as he found sellers.

In some instances he told the seller that he was buying for Hall, the plaintiff; at other and the majority of times he bought as if for himself, without disclosing his principal, or that he was acting as agent at all; he uniformly paid for the logs, in part, in grain owned by himself, and sometimes paid for the whole in grain; sometimes a credit was given him, and in such case he never undertook to pledge the credit of the plaintiff, but had the charge always made to himself; he frequently spoke of the logs and the lumber as if they were his own; he had the sawing, done by Smith, charged to himself, and he talked in such a manner that Smith supposed that the logs and lumber were his, and that he was going to build a barn therewith for the plaintiff, by the job, which, so far at least as relates to building the barn, was not true in fact. Fish paid for all the lumber bought before the 2d day of April, 1850, with his own property, not having till then been furnished with any funds by the plaintiff. Of the purchases made after that date, a part was paid for from funds furnished by the plaintiff.

On the 9th of May, 1850, the logs having been all sawed, the lumber therefrom was all piled up together by Fish in Harrington's mill yard, and there left by him, and he moved on that day with his family and effects to Townshend, and on the same day, he told the plaintiff at Townshend that his lumber was ready for him in Harrington's mill yard, and told him how it was piled and whereabouts in the yard.

The quantity of the lumber was sufficient to build the barn contemplated by the plaintiff, and according to Fish's estimate was then and there worth something over $40.

The plaintiff lived ten miles from Fish while the latter was buying the logs and getting them sawed and did not know the manner in which Fish was doing the business as above described.

The lumber was attached by the defendant on the 11th of May,

1850, in the mill yard, it not having been moved or interfered with by any one in the interval after Fish left it on the 9th.

Upon the report, the county court, April Term, 1853,—COLLA-MER, J., presiding,—rendered judgment for the plaintiff to recover the value of the lumber. Exceptions by the defendant.

*Keyes* and *Butler & Knowlton* for the defendant.

Property, as against creditors vests in the person from whom the consideration moves, *Pangborn* v. *Saxton*, 11 Vt. 80. *Crampton* v. *Admr. of Ballard*, 10 Vt. 251. *Hall* v. *Huntoon*, 17 Vt. 251. 13 Petersdorf 129. In this case, in nearly all the purchases of the logs, the consideration moved from Fish and not from the plaintiff.

The conduct of the parties, and not their written agreements, will control as to third persons, in the relations of partnership, agency, &c. *Stearns* v. *Haven et al.*, 14 Vt. 540. Powell on Con. 223 et seq. None of the transactions of Fish answered to those of an agent, except in the rare instances where he either paid the plaintiff's money or said he was buying for him.

*D. & G. B. Kellogg* for the plaintiff.

When the lumber was purchased, an agency existed by parol. An agency may be created by parol, 11 Mass. 97—288. 8 Pick 288.

Whether the agent discloses his principal, or not, does not affect the rights of the principal, but simply the personal liability of the agent. *Collins* v. *Butts*, 10 Wend. 399. 1st Cow. 290.

Hall would have been liable to the persons of whom the lumber was bought and they might have availed themselves of the testimony of Fish to establish the agency. *Beebe* v. *Robert*, 12 Wend. 413. 10 Wend. 271. 4 Taun. 574. 1 Camp. 85.

Fish could not even *pledge* the lumber for his own private debt; much less, sell it in satisfaction of such indebtedness, and his creditors could have no greater rights over it than he himself had. 6 East 17. 14 John. 128. 4 John. 104. 6 M & S. 1. 2 Strange. 1178.

The possession of the agent is the possession of his principal. 16 John. 86. 6 Sheply 127.

The opinion of the court was delivered, at the circuit session in September, by

BENNETT, J.   The only question seems to be, to whom did the property attached belong?   Was it the property of Fish, or did it belong to the plaintiff?

It is true, as a general rule, as the plaintiff's counsel argue, that, upon a purchase, the property vests in the person from whom the consideration moves, as against creditors; and in this case the consideration moved from Hall, the principal, and not from Fish, the agent.   Though the agent, Fish, might have sometimes made advances for his principal, yet it was on the principal's account, and he at once became debtor to the agent for the same.   The legal effect must be the same as if the principal had paid the money into the hands of the agent in advance.

Whether the agent disclose his principal at the time of the purchase is of no account upon the rights of the principal, or the creditors of the agent; but simply affects the personal liability of the agent for the purchase.   *Collins* v. *Butts*, 10 Wend. 399.   1 Cow. 290.   Hall would be liable to the persons of whom the lumber was purchased, notwithstanding the agent did not disclose his agency, and even though the lumber was bought on the sole credit of the agent.

If the agency in this case was *collusive*, and a shift to keep the lumber from the creditors of the agent, when in fact it was his property, and not the property of the principal, this should have been found by the referee; but we have no such finding.

This seems to be the whole case submitted to us, and the judgment of the county court is affirmed.