HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

### ALANSON M. CLARK *v.* JAMES M. TABOR.

*Practice.    Possessory title.*

A party is entitled to a charge as to the legal result of such a state of facts as *he* claims exists, and his testimony tends to prove.

The recognition, by the proprietors of adjoining lots, of a particular line as their division line, and their acquiescence in it for a period of fifteen years, will establish it and make it thereafter binding, if, during that time, either proprietor had a continued, though it was only a constructive possession of his lot.

If adjoining proprietors recognize a particular line as their division line, but, by agreement, build their division fence where it is most convenient, without endeavoring to place it on the line, a part of it being on one side and a part on the other, and agree that when the land is cleared up the fence shall be put upon the line, a mere occupation, by either proprietor, to such fence for a period of fifteen years would not establish the irregular line upon which the fence was built;—but would establish the line indicated by the general direction of the fence which the parties recognized and had in mind at the time the fence was built.

EJECTMENT to recover a piece of land claimed as a part of lot No. 2, on Hog Island. Plea, the general issue; trial by jury, April Term, 1851,—PIERPOINT, J., presiding.

It was admitted, on trial, that the plaintiff was the owner of lot No. 2, and the defendant of lot No. 3, on Hog Island, in the town of Swanton.

The plaintiff introduced evidence tending to prove that the defendant, at the commencement of the suit, was in possession of part of lot No. 2, as originally surveyed, being the land described in the declaration.

The defendant introduced evidence tending to prove that the line between lots Nos. 2 and 3 had been reputed and considered to be a line drawn from the south-west corner of lot No. 3 to the southeast corner of the governor's lot, and claimed that such line was the true division line, which would include within the bounds of No. 3 the land described in the declaration. The defendant also introduced evidence tending to prove that in 1832, one Sands Helms, under whom the defendant claims, purchased lot No. 3; that he was then shown the boundaries of his lot, by his grantor, who stated to him that the north-west corner of lot No. 3 was the south-east corner of the governor's lot; that when Helms purchased No. 3 there was not any fence between Nos. 2 and 3, except about twenty rods of log fence, running northerly from the south-west corner of No. 3, (which corner was admitted by both parties to be the true corner;) that Helms, after he took possession of No. 3, and one Otis, who then occupied No. 2, under Thomas Clark, the plaintiff's grantor, agreed to build a division fence between the lots; and, that Otis then showed Helms a line running north from the log fence, terminating at a marked tree, which Otis said was the south-east corner of the governor's lot; that it was then agreed by Helms and Otis that they would build the fence where it was most convenient, without regard to placing

it on the line, and, when the land was cleared, the fence should be put upon the true line. The fence was built, part on one side and part on the other side of the line, and was kept up until a short time before the commencement of the suit, when the defendant built a new fence, placing it on the line as he claims it. The defendant also introduced evidence tending to prove that before Helms' purchase, one Otis and Casey Clark, when Otis owned No. 2 and Clark No. 3, recognized the north-west corner of No. 3 as the south-east corner of the governor's lot, and the line between lots 2 and 3 as the defendant claimed it.

Evidence was introduced tending to prove that the log fence was built upon the line claimed by the plaintiff, and as originally surveyed, and that the line shown Helms was a straight line, and that the corner shown Helms by Otis, as the south-east corner of the governor's lot, was not as far north by several rods as the corner of the governor's lot as now claimed by the defendant.

The defendant requested the court to charge the jury that, if the proprietors of lots Nos. 2 and 3 had recognized a line as the division line between the lots, and had acquiesced in such line for more than fifteen years, it would establish such line as the boundary of each lot, and that the plaintiff was not entitled to recover for any land east of said line. The court did not so charge, but instructed the jury that the admission, by the owner of lot No. 2, of a wrong boundary, would not affect his title to the land; nor would the recognition by the owners of the two lots of a wrong line, or their acquiescence therein, be conclusive as to their title, unless accompanied by a continued possession in one or both for fifteen years; and if, at the time of the erection of the fence in 1832, by Helms and Otis, it was then agreed by them that the fence should be built where it was most convenient, (not intending to place it on the line,) and that when the land was cleared the fence should be put upon the true line, that Helms or his grantees could not acquire any right by the statute of limitations in consequence of occupying the land up to the fence, until he made some claim to the land consistent with such agreement. To this charge and neglect to charge as requested, the defendant excepted. Verdict for the plaintiff.

*H. G. Edson* and *W. W. White* for the defendant.

*A. O. Aldis* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J. The controversy in the present case is one very common and very perplexing, and one of very uncertain issue before a jury,—and one that ought not, for these reasons among many, to be revived, except upon the most satisfactory grounds.

The first inquiry upon the exceptions is, whether the case was properly tried in the court below. We must first inquire what was the state of the evidence, upon the former trial, as detailed in the bill of exceptions. And, while we always feel justified in giving the statement of the case every reasonable construction in favor of the judgment below, we have never felt justified in putting such a construction upon the case as will make one portion inconsistent with others, or any of the doings of the court below inconsistent or unreasonable, when any other probable view will allow us to escape from such results. The important facts seem to be, that Sands Helms bought the lot No. 3, in 1832, and, after he took possession, he and Otis, who had been in possession of No. 2 before that time, under Thomas Clark, (who deeded to A. M. Clark,) agreed, or had some understanding as to the dividing line; and Otis, as tenant of Clark, who owned No. 2 as early as 1832, in the language of the exceptions, " showed Helms a line running north from the log fence, terminating at a marked tree, which Otis said was the south-east corner of the governor's lot." Now, it is said in argument, this was the very line claimed by the plaintiff. But it is obvious, the defendant claimed, upon the trial, that this testimony showed a line as the boundary of the two lots, recognized by the occupants as the true dividing line between them, which corresponded with what the defendant now claims as the boundary, established by acquiescence from that time to near the commencement of the action; and the court must have taken that view of it, else why submit it to the jury at all, if it had reference to the line claimed by the plaintiffs. In this view of the testimony there was nothing to submit to the jury, and the county court are made to act a very singular part in submitting it to the jury, under a charge, if it had not reference to some line different from the one now claimed by the plaintiff. We feel bound to say that, as we understand the the case, this line showed by Otis to Sands Helms, and which the

16

occupants of both lots then claimed as the true division line between the lots, was supposed, by some of the defendant's witnesses certainly, to be the line which the defendant now claims, or the judge would not have stated it as he does, or have treated it as he did. If so, then the building of an irregular fence upon both sides of this line, and agreeing that when the land was cleared it should be built "upon the true line," must mean the line which the proprietors, or occupants of the adjoining lots then regarded, and which was indicated by the general direction of the fence, as the true line. This, then, was a distinct recognition of this, by the several occupants, as the true dividing line between the lots, and, if continued for fifteen years, would establish it as the division line. The defendant was then entitled to a charge with reference to what his testimony tended to prove, and what the court regarded it as tending to prove. It is to be remembered that, from 1832, and it would seem for many years before, both these lots were occupied; for the owners of lots not occupied are not to be supposed, ordinarily, to divide them by fences, and the log fence was in existence before this. And if we could suppose the proprietors of land to fence it before it was cleared, that of itself would be, undoubtedly, such an act of possession; or, if the fence were kept up fifteen years, that would establish the line; but there seems no doubt these lots, from the statement, were occupied before 1832. But, after that time, the term of fifteen years expired before this suit was brought.

What kind of charge, then, was the defendant entitled to demand? The same, undoubtedly, which would be the legal result, if the jury believed his evidence. And this, as it seems to us, was just what he asked the court to tell the jury, " that if the proprietors of lots, Nos. 2 and 3, had recognized a line as the division line between the lots, and had acquiesced in such line for more than fifteen years, it would establish such line as the boundary of each lot." This, of course, must be understood with reference to the facts in the case, that the parties had been in constructive possession of the lots during this whole time, and in regard to this there was no controversy, as we understand the case.

What application then did the charge given have to the case?

" That the admission by the owner of lot No. 2, of a wrong boundary, would not affect his title to the land; nor would the recognition by the owners of the two lots, of a wrong line, or their acquiescence therein, be conclusive as to their title, *unless accompanied by a continued possession, in one or both, for fifteen years.*" This is all very true, in the abstract, probably, but we cannot see what application it has to a case where there is a possession of both lots.

And it seems to us that it was directly calculated to mislead the jury. They must infer that the judge supposed it had some application to some question of possession; and, as there could be no other one, they would very naturally understand it had reference to actual possession upon one side or the other, up to the disputed line, and it seems to us the judge must have taken the same view, or else he could not have put the case upon any such ground. But this has never been required anywhere. If there is but a constructive possession of one of the lots, and certainly if so of both, it is always held sufficient to render the acquiescence in a division line binding.

And the portion of the charge in regard to the agreement when the fence was built, by no means gives the proper effect to that transaction, and the testimony in regard to it. The testimony was that the fence was built upon both sides of a line which the parties, or the occupants of the two lots, at that time regarded as the dividing line of the two lots. The testimony then was much the same as that in *Ackley* v. *Buck*, 18 Vt., 395 and in some other cases reported, and such as occurs at the circuit in many counties almost every term, and it was never doubted that this was very significant and important evidence to show the recognition and acquiescence in such line as the parties understood was the true line, and as indicated by the general direction of the fence, and, as was claimed in the present case, on the part of the defendant, extended to the south-east corner of the governor's lot. And we think the defendant was entitled to have the jury instructed in regard to the effect of this testimony correctly, if any instructions were given. The other portion of the charge, as to the conclusiveness of the line marked by the fence strictly, was correct enough. It could not, of course, establish the irregular line marked by it, while such a con-

tract remained in force. But it would establish the line which the fence was intended to indicate by its general course, and which the parties had in mind as the true line, and not necessarily the original surveyed line.

Judgment reversed and case remanded.