# COUNTY OF CHITTENDEN,

AT THE

## JANUARY TERM, 1874.

PRESENT :

Hon. JAMES BARRETT,
Hon. HOYT H. WHEELER,  } ASSISTANT JUDGES.
Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD,

---

WOLCOTT J. BEACH *v.* HIRAM J. FAY.

*Evidence.   Proprietors' Records*

While evidence of use and occupation alone, would have no legal tendency to show where a disputed line was; such evidence, in connection with the fact that such use and occupation were in accordance with the line in dispute, *would* have a tendency to show where the line was.

It appeared from the proprietors' records, that the proprietors voted to divide the land in town into lots of 100 acres each, and that the committee appointed for that purpose, made and reported such survey accordingly, and that the same was accepted and recorded. *Held,* that the presumption arising from the evidence afforded by said record was, that such a survey and division was made as was stated in said report, and that the burden of proof was upon the party who claimed a different survey and division.

TRESPASS *qua. clau.* for cutting timber on lots 163 and 174 in Bolton.   Plea, the general issue, and notice that the *locus in quo* was the soil and freehold of one Roswell B. Fay, from whom the

44

defendant had license to cut said timber. Trial by jury at the April term, 1873, PIERPOINT, Ch. J., presiding.

The declaration described the *locus in quo* as " lots numbered 163 and 174, on and near Joiner brook, so called, on the north side of Winooski River, in said town of Bolton, according to a survey thereof as recorded in the town clerk's office of said Bolton, May 16, 1801, and now appearing on said records." It appeared that the legal title to said lots was in the plaintiff, and that the legal title to lot 162, adjoining lot 163 on the east, was in said Roswell B. Fay, and came to him by deed, in January, 1866. The plaintiff claimed that the easterly line of lot .163, as laid by said survey, extended beyond, and included as a part thereof, the land upon which the alleged trespasses were committed. No question was made but that the defendant had full authority to cut timber on lot 162, under license from said Fay.

It appeared from the proprietors' records of said Bolton, that at a meeting of said proprietors, held October 11, 1800, it was voted to survey the town anew, and to divide the land into three divisions, and into lots of 100 acres each, and that John Johnson and Jabez Jones were appointed a committee to make such survey, and a report thereof, which committee were duly sworn for that purpose. It further appeared from said records, that said committee made a report of such survey accordingly, which was duly accepted and recorded therein May 16th, 1801, and that the lands of the town have ever since been claimed and occupied by the owners in accordance with said survey. Said survey is known and designated as the " Johnson survey;" and the committee reported that they had surveyed and laid out the land into regular and equal lots 165 rods and 8 links by 100 rods in size (the extra 5 rods being intended for highway purposes), and indicated the corners of each mostly by marked trees, and occasionally by stake and stones ; and they made and filed a map of such survey, which showed the lots laid out and located as reported, which map has been for many years lost. Among the lots so reported to have been laid out and described on the map, were the lots in question. From said report it appeared that the survey of lot 163 commenced at a spruce tree in the north-east corner (the same

being the north-west corner of 162) ; thence running southerly 100 rods to a maple tree in the south-east corner of 163 (the same being the south-west corner of 162) ; thence running 165 rods 8 links westerly to a beech tree ; thence 100 rods northerly to a beech tree ; thence 165 rods 8 links easterly to the place of beginning. The westerly line of lots 174 and 163, were indicated in said report as running from a ledge in the south-west corner of 174 (which lot lay south of 163), northerly, through a cascade in Joiner's brook, being the south-west corner of lot 115, lying the width of three lots north of lot 163, in the same tier. Said line was designated as the "cascade line," and was undisputed on trial as being the original line according to Johnson's survey. The plaintiff derived his title to lot 163, February 1, 1870, from the heirs of one Wm. D. Kidder, who purchased and took conveyance of it in February, 1852, and on trial claimed, and introduced evidence tending to show, that the north-east corner of 163 was, and was recognized to be, at a point designated as the "beech-trees corner," so called from a circle of beech trees there standing, and claimed to be marked as witness trees (the age of which marks did not appear), and surrounding a fallen and decayed spruce, which said point lay 183 rods and 8 links easterly from the " cascade line " and the north-west corner of said lot 163, by a surface measurement over a difficult and uneven ground. The plaintiff further claimed that the easterly line of lot 163 intersected said beech-trees corner, but that no line of marked trees, corresponding in age with the Johnson survey, was found either north or south of it; and that the defendant, after the plaintiff had acquired his title, being on the ground with one Rolla Gleason, for the purpose of ascertaining, before the trespasses complained of, the line between lots 162 and 163, pointed out the beech-trees corner, and said he supposed that to be the corner of these two lots. The defendant afterwards testified that at the time the dispute arose about the line, he did not know where his west line of 162 was. The defendant claimed, and introduced evidence tending to show, that the easterly line of lot 163 was, in fact, established by said Johnson survey at a point 100 rods east of, and parallel with, the "cascade line," and west of the land upon

which the alleged trespasses were committed ; and introduced as a witness, among others, one Hildreth, an old surveyor, who had frequently surveyed lands covered by the Johnson survey, in the immediate vicinity, who testified that 100 rods east of the " cascade line," and parallel with it, he had found a continuous line of marked trees, one of which was in the corner of one of the lots, and called for in the Johnson survey bills ; that he first found the evidence of such old line in 1870, when surveying out·lot 54, which lay about two miles north of lot 163, in the same tier ; that while surveying for the defendant in 1872, he found said line of old marked trees continuous between lots 54 and 163 ; that he examined several of the trees in said line, and found the marks to correspond in age with the year of the Johnson survey. The effect of establishing that line as the division between lots 162 and 163 would be, to make the plaintiff's lot 100 rods east and west, and the defendant's lot 220 rods east and west, making 163 to contain 62½ acres, and 162 to contain 137½ acres. The plaintiff's evidence tended to show that this line of marked trees did not extend upon lot 163 ; nor south of there, upon other lots of the Johnson survey. The defendant's evidence tended to show that the tier of lots lying next west of the " cascade line," and covered by said Johnson survey, did not correspond in the size of its lots with the record survey ; but that said lots were 212 rods long, and varied in width from 87 to 114 rods.

William Kidder, a son of Wm. D. Kidder, and his administrator, was introduced as a witness on the part of the plaintiff, and his testimony tended to show that his father, in his lifetime, occupied the now disputed territory as a part of lot 163 ; that he built and had a shanty on the disputed tract, and cleared off the timber east and north of the shanty. He further testified, that after the death of his father, who died in 1856, he, as administrator, leased the lot in 1859, and again in 1863, to tenants, who further cleared off the timber on said lot, and on said disputed tract as a part of it ; that one of the tenants in the year 1859 cultivated the land around the shanty, and raised some potatoes there.

Waldo Kidder, another son of Wm. D. Kidder, was introduced

as a witness on the part of the plaintiff, and his testimony tended to show that during the winters of 1854–5 and 1855–6, his father cut considerable timber on lot 163, and on the now disputed territory as a part of said lot, and that in 1854, while in possession, his father showed him said beech-trees corner as the north-east corner of lot 163 ; that the shanty was built in the fall of 1854 on the now disputed tract, and that a clearing was made easterly from the shanty ; that one Laundry, under a license from his father, made sugar there, and tapped trees northerly from the shanty. One P. F. Webster was introduced as a witness by the plaintiff, and testified that in 1854 he was on lot 163, and Kidder had a shanty on the now disputed territory, and was clearing off the timber around it.

The defendant requested the court to charge the jury that, under the declaration, all the testimony as to the use and occupation of lot 163, or any land claimed to be a part thereof, had no tendency to show where the true line between lots 163 and 162 was, in point of fact, run by the said Johnson's survey ; which the court omitted to do ; to which the defendant excepted. The court charged the jury, among other things, that although the record showed that these lots were laid out 100 by 165 rods, yet, if Johnson, although by mistake, actually made the survey of lot 163 as 100 rods square, instead of 100 by 165 rods, that survey would control, and the plaintiff could claim nothing more—nothing but what was actually surveyed and marked out upon the land ; that the testimony of Hildreth tended to show that the lot was actually laid out at 100 rods square, and that if the line run by Hildreth was actually run by Johnson, the plaintiff could not recover; that as it was not claimed that any corner could be found at the end of the 100 rods distance from the " cascade line," and as the north-east corner as claimed by the plaintiff (the " beech-trees" corner), was disputed, if neither corner, nor the actual east line of the lot as originally surveyed, could be established by monuments, then the north-east corner of the lot, and the east line of the lot, must be ascertained by measuring eastwardly from the " cascade line," 165 rods, and the plaintiff might recover for the trespasses committed west of that, but for nothing committed east of it ;

that the presumption arising from the records was against the claim of the defendant, and threw the burden upon the defendant to prove that Johnson did in fact run the 100 rods line, as given by Hildreth, as the boundary between the two lots. To so much of the charge as relates to the burden of proof, the defendant excepted.

The jury returned a verdict for the plaintiff, and found specially, that the north-east corner of lot 163, as surveyed and laid out by John Johnson in said survey, was the "beech-trees corner," as claimed by the plaintiff.

*Henry Ballard* and *W. L. Burnap*, for the defendant.

*Daniel Roberts* and *Robert Roberts*, for the plaintiff. .

The opinion of the court was delivered by

ROYCE, J. The issue between the parties in the county court was, whether the *locus in quo* upon which the trespass was alleged to have been committed, was a part of lot No. 163 or 162; and any testimony which had a legal tendency to show to which of those lots the *locus in quo* belonged, was admissible. It was admitted that what was called the Johnson survey, made in 1801, was the correct one, and most of the evidence was directed to the question as to where Johnson run the line between the two lots. It appeared that the lands of the town had, ever since the report of Johnson's survey was recorded in 1801, been deemed and occupied by the owners in accordance with that survey. Wm. D. Kidder purchased and took a conveyance of this lot in 1852, and the plaintiff derived his title in 1870 from his heirs.

The plaintiff, without objection, introduced evidence tending to show, that the said Kidder in his lifetime, ocupied the *locus in quo* as a part of lot No. 163, and that such occupation was continued by his administrator, and tenants under him, down to 1863. The defendant requested the court to charge that under the declaration, all the testimony as to the use and occupation of lot 163, or any land claimed to be a part thereof, had no tendency to show where the true line between lots 163 and 162, was, in point of

fact, run by the said Johnson's survey; which the court omitted to do; and to this omission the defendant excepted.

While evidence of use and occupation alone, would have no legal tendency to show where a disputed line was; such evidence in connection with the fact that such line and occupation was in accordance with the line in dispute, would have a tendency to show where the line was. Hence the defendant was not entitled to the charge requested. The only other exception which has been urged here, is as to the charge upon the question of the burden of proof. It appeared from the proprietors' records, that they voted to divide the land in town into lots of 100 acres each, and that the committee appointed to make the survey, made a report of such survey accordingly, which was accepted and recorded. The legal presumption arising from this evidence is, that such a survey and division was made as is stated in the report, and the burden of proof is upon the party who claims that a different survey and division was made, to establish the fact; and this is the way in which the subject was left to the jury by the charge.

Judgment affirmed.