# T. J. DEAVITT, Assignee, *v.* B. W. HOOKER and L. A. KENT.

## January Term, 1901.

Present: TYLER, MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed April 5, 1901.

*Sales—Passing of title when a cash payment is contemplated*—An agreement of sale, without payment or delivery, does not pass title when a cash payment upon delivery is contemplated.

*Sales—Purchase for an undisclosed principal vests title in the principal*—If one, who as purchaser in his own behalf has entered into an executory agreement of sale, acts as the undisclosed agent of another in the consummation of the trade, title passes directly from the vendor to the undisclosed principal.

*Partnership—Facts not establishing a partnership as matter of law*—Under an arrangement, not tainted with fraud, one of two partners was, with the consent of the other, represented by an agent who gave his time to the partnership business, acted as ostensible partner and received for his services his principal's share of the profits less interest on the investment of his principal. These facts did not as matter of law constitute such agent a partner.

*Partnership—Estoppel in pais—When the principle does not apply*—An ostensible partner is not estopped from denying the partnership relation when no question of credit given in reliance upon the ostensible partnership is involved. There is then nothing to feed the estoppel.

*Duty of special master—He determines questions of fact only*—It is no part of a master's duty to report his opinion as to the law applicable to the facts found, and if he does so, his opinion will not have the force of a finding of fact.

CHANCERY. The orator as assignee in insolvency of B. P. White alleged a partnership between said White and the defendant Hooker, conducted under the name of B. W. Hooker & Co., and sought to have the alleged partnership wound up and an accounting had. The cause was heard on bill, answer, master's report and exceptions thereto, Washington County, March Term, 1900, *Tyler,* Chancellor. A decree was rendered dismissing the bill. The orator appealed.

*T. J.* and *E. H. Deavitt* for the orator.

*J. W. Gordon, S. H. Jackson* and *George W. Wing* for the defendants.

WATSON, J.    The material facts reported are that Hooker and one Wheeler were equal partners engaged in business under the firm name of B. W. Hooker & Company; that Wheeler and White, the insolvent debtor, executed their written contract dated October 11, 1895, whereby Wheeler bargained, sold, and conveyed his entire interest in and to the partnership and partnership property, to White, in consideration whereof White agreed to assume the payment of certain promissory notes at the National Bank of Barre, amounting to $2,500, executed by Wheeler and others, and to cause the same to be taken up and delivered to Wheeler immediately; that White also agreed to assume and pay certain other notes and debts therein named as outstanding against Wheeler or the firm, and to pay Wheeler the sum of $500 on the 14th day of October, 1895, and the further sum of $400 in installments thereafter; that both parties regarded the trade completed, "except payment and surrender of possession of the property;" that White, by reason of some talk with the officials, had hopes of paying the notes at the bank with his own note secured by western mortgages, but his credit had suffered by heavy losses, and the bank concluded not to accept his note; that thereupon, on October 14, 1895, White requested Kent,—who had before signed notes with him,—to sign a note as surety for $2,500, with which to take up these notes, but Kent objected to signing any more notes unless he could be secured; that White informed him of the trade with Wheeler, and it was then agreed that Kent should be the owner of the property purchased, and White was then and there made Kent's agent to complete the trade; and it was also agreed between them that White should work in the store with Hooker,—who was his son-in-law,—and should receive

for his services all of Kent's half of the profits, in excess of six per cent. interest on his money invested, to which arrangement Hooker consented; that the trade with Wheeler was thereupon consummated by White as Kent's agent, but in so doing he did not disclose his agency; that White has acted as such agent ever since; that just before October 11, White borrowed of one Bliss $1,000 upon his note signed by Kent as surety, which money White intended to use in paying for the property in case he should trade with Wheeler; that in the agreement with Kent, White was to use this money in the same way and Kent assumed the Bliss note, which he afterwards paid; that a note for $2,500 signed by Kent and White was exchanged at the bank for the notes against Wheeler which were delivered to him, and this new note Kent afterwards paid; that White paid the balance on the contract in a manner satisfactory to Wheeler, and that there was no fraud in fact in the transaction.

In view of the finding that ever since the agreement with Kent, White has acted as his agent, we construe the report as meaning that all payments made by White were made as such agent. The title to the property had not passed to White at the time of his arrangement with Kent. It was not necessary for White to disclose his agency when completing the trade, and his failure so to do did not prevent the title passing directly to his principal: *Hall* v. *Williams, 27* Vt. 405; *Ridout* v. *Burton,* id. 386.

Upon the consummation of this contract, Hooker and Kent became equal partners, and White was in the employ of Kent in carrying on the business. The fact that as between Kent and White, the latter was to receive for his services all of Kent's half of the profits in excess of six per cent. interest on the money invested, did not make White a partner. To be a partner he must not only share in

the profits, but he must share in them as a principal, which he did not do: *Fish* v. *Thompson,* 68 Vt. 273; *Loomis* v. *Marshall,* 12 Conn. 69, 30 Am.Dec. 596; *Clark* v. *Smith,* 52 Vt. 529.

While it is true that by White's agreement, his compensation for services depended upon the profits of the business of the firm, he had no specific lien on the profits to the exclusion of other creditors, and he was not liable for the debts of the firm: *Fitch* v. *Harrington,* 13 Gray, 468, 74 Am. Dec. 641; *Macy* v. *Combs,* 15 Ind. 469, 77 Am. Dec. 103. Nor was the property of the firm subject to execution for his individual debts: *Bartlett* v. *Jones,* 2 Strob. 471, 49 Am. Dec. 606.

The master finds that White acted ostensibly as a partner. Were there unpaid debts contracted in the belief that he was in fact such partner and on the credit of it, he might be liable therefor upon the principle of estoppel *in pais;* but when, as in this case, it is not claimed that any such debts exist, there is nothing to feed the estoppel, and the principle does not apply: *Hicks* v. *Cram,* 17 Vt. 449; *Thompson* v. *First National Bank of Toledo,* 111 U. S. 529. The giving of a note by White to renew some of his old debts contracted before he thus acted as such partner, was not the contracting of a debt on the faith of it.

The master expresses his opinion upon the law that when the contract between Wheeler and White was signed, the title to the property vested in White, and that Wheeler had only a lien as security for payment; and the orator's counsel relies thereon, to some extent, in support of his contention.

It is no part of a master's duty to report his opinion as to the law governing a case on the facts found, and if he so does, it will not have the force of a finding of fact.

*Decree affirmed and cause remanded.*