# Holman J. Amey *v.* Stanley Hall

[181 A.2d 69]

March Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed May 1, 1962

*Witters, Longmoore, Akley & Brown* for the plaintiff.

*Downs & Rachlin* for the defendant.

**Holden, J.** The main controversy in this action of trespass is the location of the boundary dividing adjoining timberlands contained in one of the original lots in the town of Guildhall. The parcel in question is designated as Lot 14 in Range 1. The plaintiff has a deed to the southeast half of Lot 14, referred to as the south lot. The defendant holds title to the northwest half comprising the remaining area to the north of the plaintiff's holding. No courses, metes nor bounds are given for Lot 14 or any of its subdivisions.

The boundary claimed by the plaintiff was identified by old blaze lines and old corners which the court below located and found marked on the land. The line claimed by the defendant is constituted from a survey made at the instance of the defendant after the alleged trespass had been committed. The action was instituted under the provisions of 13 V.S.A. §3606. Trial by the court, sitting without a jury, included a view of the premises and resulted in judgment for the plaintiff in the amount of seventeen hundred fifty dollars. Both parties have appealed. The defendant challenges the sufficiency of the findings to support the judgment. The plaintiff questions the adequacy of the damages.

In reporting its findings the court detailed at length the claims of the respective parties and the substance of the evidence offered in

support of the different locations of the boundaries advocated. These are the important facts.

The east and west boundaries of Lot 14 are well marked on the ground and have been accepted as such by both parties. The location of the south boundary of the main lot is not marked on the ground but is ascertainable by reference to the south range line of the adjoining lot No. 15 and extending that line a distance of one hundred yards on the general bearing of the range lines of the town.

From the southwest corner of Lot 14, as indicated by the intersection of the range line with the west boundary of the lot, measuring north along this lot line, a distance of 1,758 feet (approximately 100 rods) the court located a well marked maple tree with old witnesses surrounding it. At this point the court found what it described as a "very old blazed line consisting of four sets of blazes ranging from 12 to 70 years of age. This line runs on a general bearing of north 52° 15' E which is the general bearing of the range lines of the lots in the town of Guildhall." In the vicinity of this line there is a road known as the Old County Road which turns westerly near an old lumber camp. The blazed line referred to is located directly south of the buildings which remain on the site of the old lumber camp. The division line claimed by the plaintiff does not divide Lot 14 into equal halves. It gives the plaintiff a parcel of approximately one hundred rods at each dimension, with the defendant's area being one hundred rods by sixty rods.

The lumber camp was established by the defendant's predecessor in title, the Colby Lumber Corporation. This corporation owned the northern half of Lot 14 in the nineteen twenties and conducted logging operations on this holding in the fall of 1929 and the winter of 1930. The Colby Corporation treated the marked blazed line just south of its camp as the dividing line between its ownership of the northern portion and the lands held by the owner of the southern portion of Lot 14.

The boundary claimed by the defendant was surveyed by reference to the range and lot lines located on the ground as the boundaries of adjacent and neighboring lots in accordance with the uniform bearings and dimensions common to the lot divisions of the original plan of the town. The location of the northeast corner of Lot 14 was accomplished by extending the marked north range line of Lot 16 on the

common bearing of north 52° 15′ east to a point where it intersects the known west line of Lot 14. This point was assumed by the defendant to be the northwest corner of Lot 14 although the corner thus established was not marked on the ground. The findings report that the defendant's surveyor, "believing the lots to be 160 rods long, surveyed south on the west lot line of Lot No. 14 range one as a division line between the north half and the south half of that lot."

The court found that the defendant cut over twenty-five acres of woodland south of the boundary line claimed by the plaintiff, designated by the court as the Amey line. Of the total acreage harvested it was determined, and the defendant concedes, his operation extended to five acres that are located south of the line claimed by the defendant, referred to as the Hall line.

Acting on the statute, the court awarded the plaintiff single damages for the cutting done on the twenty acre area lying between the Amey and Hall lines. Treble damages were assessed against the defendant for the timber cut south of the Hall line which would divide the main lot into equal parcels.

The defendant questions the sufficiency of the findings for the reason that the court failed to specifically locate the line determined to be the actual dividing boundary. The defendant further assigns error to the omission in the findings of a declarative statement of the plaintiff's ownership and title to the timber cut by the defendant.

 It is the duty of the court, in making findings, to sift the evidence and state the facts. *Raithel* v. *Hall,* 99 Vt. 65, 70, 130 Atl. 749; *Francis* v. *London Guaranty & Accident Co.,* 100 Vt. 425, 428, 138 Atl. 780. There is no requirement to relate the opposing claims of the litigants nor to detail the evidence advanced in support of the respective claims. If the evidence is disputed or in conflict, its mere recitation is insufficient. *Hammonds, Inc.* v. *Flanders,* 109 Vt. 78, 81, 191 Atl. 925.

But from the record certified in the instant case it appears the essential facts are settled. The deficiencies of which the defendant complains are legal in nature rather than factual. If these omissions were supplied they would merely state the court's ultimate conclusions of law from the subordinate facts previously expressed.

The defendant does not question the existence of the ancient blazed line and its terminal monuments. Nor is it denied that the defendant's

predecessor observed and respected this line as the division between the two properties. By the same token, it does not appear that the plaintiff refutes the method nor the accuracy of the defendant's survey in dividing Lot 14 into equal parcels. In this situation it was not inappropriate for the court to report the opposing claims and the constituent elements of each in order to demonstrate all of the factors which make up the pending controversy.

It is obvious that this was the method employed by the trier to report the subordinate facts. Under our practice there is no obligation on the fact finder to state in the findings the legal conclusion of title to the disputed land nor to express, in so many words, which boundary prevails on the subordinate findings. See *Deavitt* v. *Hooker,* 73 Vt. 143, 146, 50 Atl. 800; *Thompson* v. *Smith,* 119 Vt. 488, 496, 129 A.2d 638.

Referring the final judgment to the findings, as we are bound to do, it is abundantly clear that the trial court determined that the division marked on the ground by old blazed lines and old corners, which was adhered to by the defendant's predecessor some thirty years past, established the true boundary. This conclusion, of necessity, expressed an equivalent determination of the plaintiff's title to the timber cut south of this division.

The essential question is whether the result expressed in the judgment is supported by the facts which appear in the findings to render it sound in law.

To acquire title to the limits of a boundary that has been established by acquiescence there must be a mutual recognition of the particular line by the adjoining owners coupled with continuous possession by one or both parties for the length of time required for adverse possession. *D'Orazio* v. *Pashby,* 102 Vt. 480, 497, 150 Atl. 70; *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 451, 101 Atl. 151; *Spaulding* v. *Warren,* 25 Vt. 316, 325. Thus, when the specific demands of adverse possession are met, title will be confirmed to the limits of the line without regard to opposing descriptions in deeds of conveyance and will bind the parties and the courts as well.

To be conclusive, the acquiescence must endure for the period of fifteen years. *Smith* v. *Bullock,* 16 Vt. 592, 593; *Camp* v. *Camp,* 59 Vt. 667, 668, 10 Atl. 748. Passive compliance for a lesser

time will not settle the issue, and if done by agreement, the contract must meet the requirements of the statute of frauds. *Camp* v. *Camp, supra,* 59 Vt. at 669. But this is not to say that acquiescent occupancy of land, whether actual or constructive, has no evidentiary force. Indeed, a boundary may be established by acquiescence for an extended period of time even as to lands that are not subject to adverse user. *Brown* v. *Derway,* 109 Vt. 37, 43, 192 Atl. 16. And while acquiescence in a wrong line will not conclusively establish it as the true line, continued satisfaction and compliance with a boundary marked on the ground is persuasive evidence which supports its selection as the correct division. *Brown* v. *Derway, supra,* 109 Vt. at 43 ; *Aldrich* v. *Griffith,* 66 Vt. 390, 402, 29 Atl. 376 ; *Beach* v. *Fay,* 46 Vt. 337, 343.

It is a reasonable and proper inference that the acquiescence of the defendant's predecessor, Colby Lumber Corporation, in the old blazed line during its 1929-1930 operations continued thereafter during the years that have intervened. *Nelson* v. *Bacon,* 113 Vt. 161, 167, 32 A.2d 140 ; *Smith* v. *Martin,* 93 Vt. 111, 120, 106 Atl. 666. If subsequent compliance has been interrupted it was incumbent upon the defendant to establish this fact. *Nelson* v. *Bacon, supra,* 113 Vt. at 168.

The possession to the marked line need not be accompanied by actual physical occupancy. Although the defendant's predecessor, at the outset, may have been entitled to occupy a full half of the acreage of Lot 14 as now claimed by the defendant, it was competent for the Colby Lumber Corporation to withdraw its claim by adopting the blazed line as marked on the ground. Although the record title remains, constructive possession of the area abandoned ceases. At the same time, the possession of the plaintiff, or his predecessor, would operate against the interest of the defendant. *Crowell* v. *Bebee,* 10 Vt. 33, 35, 33 Am. Dec. 172.

To constitute continuous possession of lands, the law does not require the occupant to be present on the site at all times. The kind and frequency of the acts of occupancy, necessary to constitute continuing possession, are dependent on the nature and condition of the premises as well as the uses to which it is adapted.

Woodlands are usually occupied in the literal sense only during periods of harvesting the timber. Nevertheless they may be

subject to continuous possession within the contemplation of the law over periods of time during the intervals between cuttings. *Webb* v. *Richardson*, 42 Vt. 465, 478. The failure of the findings to state specifically. that the plaintiff was continually present on the land up to the blazed line does not invalidate the judgment. *Barrell* v. *Renehan*, 114 Vt. 23, 30, 39 A.2d 330.

To be effective, the acquiescence of the adjoining owners must be mutual, with each party recognizing the line adopted by the other. And the concurrence of the party against whom the recognized line operates must be clear and definite. It was so here, as far as the Colby Lumber Corporation was concerned. The requirement of proof is less stringent in its application to the plaintiff, since the blazed line works to his advantage. *Ackley* v. *Buck*, 18 Vt. 395, 400. Under the general rule, which requires this Court to infer such facts from those certified as reasonably support the judgment, the plaintiff's acquiescence may be inferred by implication from the other findings. *Andrews* v. *Newton*, 118 Vt. 290, 292, 108 A.2d 517; *Barrell* v. *Renehan, supra*, 114 Vt. at 29.

The findings report that the north and south range lines of Lot 14 are not marked nor ascertainable on the ground. There is no evidence of a marked boundary at the division line claimed by the defendant. From this it appears that the parcels called for in the deeds of the parties were never surveyed, or if surveyed, the markings have been entirely obscured with the passage of time.

In these circumstances the lines and monuments actually marked and recognized on the ground in the distant past will constitute the survey. The lines thus established will prevail over the description set forth in the original grant if the two are at variance. *Neill* v. *Ward*, 103 Vt. 117, 147, 153 Atl. 219. "And when a line is marked between the lots, to which both parties claim as the division line for more than fifteen years, this is considered as decisive evidence that the line thus acquiesced in is the true line; and is not to be disturbed by any survey or new line made after that period has elapsed." Williams, C. J. in *Burton* v. *Lazell*, 16 Vt. 158, 161.

The judgment of the county court located the boundary according to the line of early origin. It bears ancient markings and it appears that its acceptance as the division of the property by the adjoining

owners has endured for more than fifteen years. Upon these considerations it was legally entitled to prevail over the line indicated by the defendant's recent survey.

Turning to the appeal concerning the assessment of damages, the plaintiff contends he is entitled to multiple damages according to the provisions of 13 V.S.A. §3606 for all of the cutting done south of the established line. Again referring the judgment to the findings, it is readily apparent that the court awarded single damages in the amount of one thousand dollars for the cutting done in the area that lies between the opposing lines claimed by the parties. Treble damages to the extent of seven hundred fifty dollars were assessed for the five acre area which the defendant cut beyond his own proposed boundary.

To justify a threefold recovery under the statute the plaintiff was required only to prove that the defendant cut timber on plaintiff's land. *Davis* v. *Cotey, 70* Vt. 120, 121, 39 Atl. 628. However, the enactment contains the provision that —"if it appears on the trial that the defendant acted through mistake, or had good reason to believe that the trees, timber or underwood were on his land the plaintiff shall recover single damages only, with costs." Thus the defendant may escape multiple damages if he satisfies the court that he had adequate reason to understand he had title to the area where the cutting was done. *Ripchick* v. *Pearsons,* 118 Vt. 311, 318, 109 A.2d 347; *Davis* v. *Cotey, supra, 70* Vt. at 121.

In substance the court adjudged that the general description of his deed was sufficient to excuse the defendant from a triple award as to the cutting done within half of the land area of original Lot 14. But the deed did not relieve him from the consequences of exceeding the limits of his own claim, for as to the five-acre area the court found the cutting was done prior to any appreciable attempt on his part to locate the boundary by survey. This aspect of the trespass was adjudged willful and malicious, and damages were awarded accordingly.

These considerations were sufficient for the court to apportion the damages according to the location of the cuttings in reference to the area in dispute. The facts found, when applied to the statute, support the damages awarded.

*Judgment affirmed.*