## Mildred M. (Rollins) Rambeau v. Marvin Barrows

[ 255 A.2d 175 ]

April Term, 1969

Present: Holden, C.J., Shangraw, Barney, Keyser, JJ., and Daley, C. Supr. J.

Opinion Filed June 3, 1969

*Latham & Eastman* for the Plaintiff.

*William S. Burrage, Esq.*, for the Defendant.

**Holden, C.J.** This action in equity has developed from a dispute over the plaintiff's north boundary of shore property on Lake Champlain in Ferrisburg. The cause was precipitated by the defendant's removal of a line fence which the plaintiff had installed in September 1966. After hearing the parties and reporting his findings, the chancellor entered a decree which fixed the boundary as claimed by the plaintiff and allowed recovery against the defendant for damages in trespass.

The only issue presented to the chancellor was the location of the plaintiff's northern boundary. This appeal by the defendant calls upon us to review the correctness of the boundary established by the decree.

The present controversy is indirectly related to the chancery proceeding and reported in *Welch* v. *Barrows* (1966), 125 Vt. 500, 218 A.2d 698. The court below, apparently without objection, took judicial notice of the earlier case.

The origin of the plaintiff's title is a deed from George and Lucy Goodwin dated September 20, 1948 which described the property conveyed:

"It being two lots on the so-called Del Grella 'Thendara' property. Lot number one being the same lot number one as appears in a survey made by Arthur W. Hoag, surveyor, in April, 1945, with the addition of another three .corner piece of land being added thereto as follows: At the northern boundary which is the line fence. The line continues eastward from the point marked 'line fence' (being indicated by a small circle on the survey) for one hundred and fifty five feet along said fence thence southwesterly for one hundred and thirty seven feet to a big elm tree and then continues southwesterly for one hundred and thirty five feet to a hard hack tree with an iron pin at the foot and said pin also being at the eastern end of the dividing line of lot number one and two. The second lot being that part of lot number two on the survey which starts from low water mark easterly along the Booth Estate Line (northern boundary of Booth Lot) for 150 feet to a pile of stone rocks thence northeasterly to the said hard hack tree and iron pin. Including any and all buildings and improvements on said lots. Reference is hereby had to deed of John B. and Belle P. Clark to the grantors herein dated June 18, 1945, recorded in Book 32, page 438 of Ferrisburg Land Records, and all deeds, records,

documents and surveys therein mentioned, and said Ferrisburg Land Records, for a more particular description and identification of the land and premises hereby conveyed."

The plaintiff's predecessor Goodwin acquired the property from John B. and Belle P. Clark on June 18, 1945. The description in the conveyance to the plaintiff's predecessor is the same as in the deed from Goodwin's except the distance of the first course along the line fence is specified to be 150 feet.

The findings trace the source of the plaintiff's title through successive conveyances to a grant by Emily M. Kimball to Alys B. Del Grella (formerly Van Dusen) dated March 3, 1905.

The chancellor found that the fence, referred to in the plaintiff's deed and the surveys, was a three strand barbed wire fence. In the fall of 1966, the plaintiff erected a chain link, or cyclone fence, at the westerly portion of the barbed wire fence. Except for a broken area, the fence had been in place continuously from 1907 until it was removed by the defendant during the winter of 1966-1967, without notice to the plaintiff.

During the fall of 1966 the plaintiff procured a survey to be made of her property, referred to in the findings as the Webster-Martin survey. This survey was received in evidence, along with the Hoag survey of 1945, referred to in her deed. The chancellor found the Webster-Martin survey "checked exactly with the monuments on the ground, the plaintiff's deed and the Hoag survey." The chancellor concluded that these surveys accurately show the north line of the plaintiff's property to be along the fence line.

The findings also tell us that the defendant and his wife acquired title to the adjoining lands north of this line in 1950. Before that time, when the plaintiff and her husband acquired their land, they walked the boundaries with their predecessor in title, John Clark, who pointed out two iron pipes and a post set in cement along the line she claims to be her boundary. These points are indicated in the Webster-Martin survey. There was no dispute about the location of the boundary until 1961.

Since that time the defendant has claimed the plaintiff's north line extended westerly from a flat iron pin at her northeast corner to the lake shore, as laid out in a survey prepared by Lee Lowell. To support this claim, Lowell prepared two maps of the same scale. One

map was plotted from some of the monuments on the ground, mentioned in deeds of adjoining lands to Alice Van Dusen. The other map was prepared from the descriptions contained in various deeds to Alice Van Dusen during the period 1902-1905. When an overlay, prepared from the deeds, is placed on the map with reference to the monuments, the lines appear to coincide. By resorting to the overlay, the defendant's north line would be located as claimed by the defendant,—some 30-35 feet south of the fence.

It is to be noted, however, that in the deed from the common predecessor in title, Kimball, to Van Dusen, no monuments other than the lake shore are mentioned. Only courses and distances were given. The first monuments mentioned in the plaintiff's chain of title appear in the deed from Clark to Goodwin in 1945, after the Hoag survey of the same year.

The chancellor rejected the defendant's survey for the principal reason that it disregarded the monuments on the ground which were referred to in the plaintiff's deed and the Hoag survey. That was within his province. *Barr* v. *Guay,* 127 Vt. 374, 250 A.2d 512, 515. The findings also state "(t)hat none of the deeds in the defendant's chain of title * * * describe said property by metes and bounds." The findings further point out that bearings of the courses in the Lowell map were taken in 1907 and even with adjustments for changed declination, Lowell stated his line could be in error several feet.

The main argument of the defendant's appeal is that the northern boundary, located by the chancellor, exceeds the limits of course and distances called for in the Kimball grant to the plaintiff's predecessor in title. The defendant contends that the courses and distances in the deed from Kimball, as plotted by his survey, must control over the line determined by the chancellor.

He urges that the description in the Kimball deed of 1905 is particular and must prevail over the general language in the plaintiff's title. The defendant relies on *Parrow* v. *Proulx,* 111 Vt. 274, 277, 15 A.2d 835. The opinion in that case concerned a single instrument in which the particular and general descriptions of the deed did not coincide. In that situation Justice Sherburne points out that effect must be given to the particular description, expressed by courses and distances and permanent monuments, over general words of description that may have been used in the deed, tending to enlarge or diminish the boundaries.

554

■ It is also a rule of construction that in a conflict between courses and distances, and known boundaries and monuments, courses and distances must yield. *Neill* v. *Ward,* 103 Vt. 117, 147, 153, 153 A. 219. Compare *Haklits* v. *Oldenburg,* 124 Vt. 199, 204, 201 A.2d 690.

■ In any event, the description of the north boundary, upon which the plaintiff relies, is not stated in general terms. It refers to the Hoag survey of 1945 which establishes the northern boundary, at the line fence, which the chancellor located on the ground. It also specifies other monuments which are related to specific distances. The fact that the Hoag survey was not recorded with the town clerk does not impair its utility in describing the lands conveyed. *Pingry* v. *Watkins,* 17 Vt. 379, 386.

Persuasive evidence that the north boundary claimed by the plaintiff is the correct line, resides in the fact that this location was quiet and undisputed until 1961. It was then that the defendant constructed the cabins that were the subject of the litigation in *Welch* v. *Barrows,* 125 Vt. 500, 502, 218 A.2d 698.

■■ Continued satisfaction and compliance with a boundary marked on the ground over an extended period of time, is strong evidence in support of its selection as the correct division. *Amey* v. *Hall,* 123 Vt. 62, 67, 181 A.2d 69; *Brown* v. *Derway,* 109 Vt. 37, 43, 192 A. 16. And the accepted boundary, when marked by identifiable monuments, will prevail over the description in the original grant where the two are at variance. *Amey* v. *Hall, supra,* 123 Vt. at 68, 181 A.2d 69; *Neill* v. *Ward, supra,* 103 Vt. at 147, 153 A. 219; *Burton* v. *Lazell,* 16 Vt. 158, 161.

■ The line established by the equity court is justified according to the facts and is sound in law.

*Decree affirmed.*